IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT G. PERRY<br>    c/o JPRowley Law PLLC<br>    1701 Pennsylvania Ave., N.W.<br>    Suite 200<br>    Washington, D.C. 20006<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case: 1:22–mc–00079<br>Assigned To : Cobb, Jia M.<br>Assign. Date : 8/18/2022<br>Description: Misc.<br><br>No. _____ |

## EMERGENCY MOTION FOR RETURN OF SEIZED PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g) AND REQUEST FOR INJUNCTIVE AND OTHER RELIEF

Representative Scott G. Perry, a sitting Member of the United States House of Representatives, in both his official and personal capacities and through undersigned counsel, respectfully requests that this Court order the United States Department of Justice to return cellular phone data and any other property it seized during the execution of a warrant on August 9, 2022, enjoin the government from searching the data from that device pursuant to an anticipated second search warrant, be prohibited from obtaining records and information associated with the cellular phone that is within the possession, custody and control of AT&T, and issue a temporary restraining order preserving the status quo until these issues can be fully litigated.

### I. PROCEDURAL BACKGROUND

On August 2, 2022, United States Magistrate Judge Susan E. Schwab of the United States District Court for the Middle District of Pennsylvania issued a warrant authorizing the seizure of Rep. Perry's cellular telephone based on an application by a federal law enforcement officer or an

1

attorney for the government requesting the search and seizure of property located in the Middle District of Pennsylvania. *Attachment B-1* to the warrant states in relevant part that:

> After seizing the device(s), law enforcement intends to transport the device(s) to Washington, D.C., or to the DOJ-OIG forensic laboratory in Northern Virginia. To ensure that evidence is preserved from spoliation, law enforcement personnel may conduct a forensic extraction of the device(s), may image the device(s), and/or may take manual screen captures of the contents of the device(s). Any forensic extraction, imaging, or manual screen captures will not be reviewed by law enforcement personnel until further order of a court of competent jurisdiction, except to the extent necessary to ensure that the copies of the device(s) are accurate and complete and to ensure that information on the device(s) is preserved from spoliation.

The warrant further authorized the seizure of "Records and information associated with [Rep. Perry's cellular telephone number] that is within the possession, custody, or control of AT&T." (*Attachment B-1* to the warrant).

On August 9, 2022, Special Agents from the Federal Bureau of Investigation executed the warrant while Rep. Perry was on vacation with his family in New Jersey. They seized his phone, created a forensic image of it, and returned the physical phone to Rep. Perry the same day, again while he was in the company of his family. Rep. Perry does not presently know what, if any, steps the government has taken to obtain his telephone records from AT&T.

In subsequent discussions with prosecutors from the United States Department of Justice, the undersigned counsel explained that the data from Rep. Perry's phone includes information that is protected by the Speech and Debate Clause of the United States Constitution, the Attorney-Client privilege, marital privilege, and which is otherwise personal and confidential. Counsel for Rep. Perry requested that the government not seek a second search warrant that would allow them to access the data from his phone and offered to review the information and cooperatively provide the government with whatever information they were seeking, so long as it did not infringe on the

2

Speech and Debate Clause, the Attorney-Client Privilege, and other applicable privileges and protections.

The Justice Department attorneys declined that offer and stated that they would consider an alternative process whereby the government and Rep. Perry's counsel would simultaneously review the information from the phone and either agree or disagree that specific records are within the protections of the Speech and Debate Clause. The Justice Department attorneys recognized that it was unlikely that the contemplated process ultimately would be satisfactory to either or both parties and were less than optimistic that a workable solution could be reached by agreement. They stated that, in that event, the government would pursue a second search warrant that would allow the government to review the data obtained from Rep. Perry's phone.

The Justice Department attorneys told counsel for Rep. Perry that the government would require, as a condition of any agreed upon review process, that he waive the disclosure protection of the Speech and Debate Clause. The Justice Department prosecutors stated that they intend to seek a second search warrant to review the cellular phone data absent such an agreement. Rep. Perry declined to waive that protection and now seeks appropriate relief from the Court.

Upon information and belief, the investigation that the search warrant was issued in connection with is being conducted by the Justice Department in the District of Columbia. At least two of the FBI Special agents who executed the warrant are assigned to the FBI's Washington Field Office. When counsel for Rep. Perry contacted an Assistant United States Attorney in the Middle District of Pennsylvania to inquire about the warrant, they were directed to one of the prosecutors at Justice Department headquarters in Washington, D.C. Counsel then communicated with the Justice Department attorneys as described above. The warrant itself also authorizes the

government to "transport the device(s) to Washington, D.C., or to the DOJ-OIG forensic laboratory in Northern Virginia."

Accordingly, counsel for Rep. Perry has a reasonable belief that the Justice Department attorneys and/or the FBI Special Agents working at their direction have physical custody of, or access to, the image they made of the data from Rep. Perry's cellular phone within the District of Columbia.

## II. ARGUMENT

The Constitution's Speech and Debate Clause states that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other place." U.S. CONST. art. 1 § 6, cl.1. The Supreme Court has explained that the Clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972). In extending that reasoning to include an absolute non-disclosure privilege in addition to a testimonial privilege, the U.S. Court of Appeals for the District of Columbia Circuit has held that "the purpose of the Speech and Debate Clause is to ensure that the legislative function the Constitution allocates to Congress may be performed independently, without regard to the distractions of private civil litigation or the periods of criminal prosecution." *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) quoting *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995)(internal quotations omitted).

Unmoved by the Executive's effort to avoid the Speech and Debate issue by using a "filter team" consisting of Executive Branch officials, the court held in *Rayburn House Office Building* that "a search that allows agents of the Executive to review privileged materials without the

4

Member's consent violates the Clause." *Id.* at 663. While the court held that the search of paper files in a congressman's office violated the clause, there had not yet been any such violation with respect to the Executive's copying of computer hard drives and other electronic media because an earlier order of the court provided the Congressman with "an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive." *Id.* That order required the district court to:

> (1) copy and provide the copies of all the seized documents to the Congressman; (2) "using the copies of computer files made by [the Executive], search for the terms listed in the warrant, and provide a list of responsive records to Congressman Jefferson;" (3) provide the Congressman an opportunity to review the records and, within two days, to submit, *ex parte*, any claims that specific documents are legislative in nature; and (4) "review *in camera* any specific documents or records identified as legislative and make findings regarding whether the specific documents or records are legislative in nature."

*Id.* at 658 (internal quotations omitted).

Rep. Perry respectfully submits that Article I of the Constitution authorizes only him, as the Member of Congress whose records are at issue, to make determinations, likely in consultation with the House Counsel's Office, about the extent to which the Speech and Debate Clause applies to those records, and that leaving that determination to a judge appointed under Article III presents similar issues as relying on a member of the Executive Branch to do so. Rep. Perry therefore requests that the materials at issue be returned to him so that he can determine which records are protected and which are not prior to any Executive Branch review. Alternatively, Rep. Perry requests, at a minimum, that this Court adopt the procedures required by the D.C. Circuit in *Rayburn House Office Building* to prevent the Executive from unlawfully reviewing protected materials.

Rep. Perry also requests that the Court adopt a similar process to ensure the protection of materials protected by the Attorney-Client privilege and other applicable privileges and protections.

Because the initial warrant that the government served on Rep. Perry on August 9, 2022, only authorized the seizure of the phone and preservation of its data and did not authorize the government to search or review that information, it is premature to argue that the second warrant that would be required to do so (but has not yet been issued), is overly broad or a violation of the Fourth Amendment. Rep. Perry reserves the right to supplement this motion if warranted by future developments.

Rep. Perry also seeks a Temporary Restraining Order precluding the government from searching the data it obtained from his phone until this Court has ruled on his request for the return of his property.

### A. Criminal Rule 41(g) Authorizes the Court to Return the Data the Government Obtained from Rep. Perry's phone.

Rule 41(g) of the Federal Rules of Criminal Procedure provides:

> A person aggrieved by an unlawful search and seizure of property may move for its return in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

"Rule 41(g) . . . provides a potential mechanism . . . for dealing with the question of retention at a time when the government may be expected to have greater information about the data it seeks and the best process through which to search and present that data in court." See *United States v. Ganias*, 824 F.3d 199, 219 (2nd Cir. 2016). "When the motion [to return property] is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." *U.S. v. Comprehensive Drug*

*Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (*en banc*). "Even though property has been lawfully seized, harm may come from the interference with the use of the property by persons who are not suspected of wrongdoing." 3A Wright & Miller, Fed. Prac. & Proc. Crim. § 690 Motion to Return Property (4th ed.).

Because the government has seized "records and information" which it does not have authority to search, all such records and information must be returned to Rep. Perry promptly, pursuant to Rule 41(g).

### B. Civil Rule 65 Authorizes the Court to Immediately Limit Any Search of Data from Rep. Perry's Cellular Phone.

To justify a preliminary injunction, the movant must demonstrate that (i) it is likely to succeed on the merits of the underlying dispute, (ii) irreparable harm will result absent immediate intervention of the court, (iii) any harm to other parties that would be caused by granting the injunction does not outweigh the equities in favor of granting the preliminary injunction, and (iv) granting the injunction serves the public interest. *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 673-74 (D.C. Cir. 1985). In addition, "[l]imiting the preliminary injunction to cases that do not present . . . difficult questions of law . . . would deprive the remedy of much of its utility." 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.3 Grounds for Granting or Denying a Preliminary Injunction—Probability of Success on the Merits (3d ed.). Thus, the Second Circuit has held as an alternative to showing a likelihood of success on the merits, "[a] party seeking injunctive relief must ordinarily show: . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995). *See also U.S. v. Aluminum Co. of America*, 247 F. Supp. 308, 314 (E.D. Mo. 1962), *judgment aff'd per curiam*, 382 U.S. 12 (1965)("[W]hile disputed facts and law as to the ultimate issue will be considered by the Court on

7

a Motion for a Preliminary Injunction, the fact that there are disputed facts and law does not in itself prevent issuance of a preliminary injunction.").

A temporary restraining order may be granted immediately if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).[1]

### 1. Rep. Perry is Likely to Succeed on the Merits

Rep. Perry is likely to succeed in his action to limit the scope of the government's review. As a sitting Member of Congress, his communications clearly enjoy the protections of the Speech and Debate Clause. He is asking that the Court prevent the government from reviewing those communications, whether through a filter team or otherwise, as the D.C. Circuit ordered in Rayburn House Office Building.

Rep. Perry is also likely to succeed on the merits of his request that the Court follow a similar process with respect to his communications that are protected by the Attorney-Client Privilege, Marital Privilege, and any other applicable privilege. The Fourth Circuit recently held,

---

[1] As noted, the undersigned attorneys for Rep. Perry have been in communication with government counsel, including having provided notice of the filing of this motion and will advise of any hearing set by the Court. Thus, Plaintiff is not required to submit an affidavit supporting his claim that irreparable harm would result from the search of his phone data and so doing could constitute a statement against his penal interest. *See* 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2951 Temporary Restraining Orders—In General (3d ed.) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements. Indeed, even if a court denominates an order as a 'temporary restraining order' in this situation, Rule 65(b) may not apply and, if there is an adversary hearing or the order is entered for an indeterminate length of time, the 'temporary restraining order' may be treated as a preliminary injunction.").

for example, that the Executive Branch cannot be delegated the "judicial function" of determining whether correspondence is subject to the Attorney-Client Privilege. *United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159, 176 (4th Cir. 2019). There, *a magistrate judge had authorized* a government Filter Team, comprised of federal agents and prosecutors, to inspect privileged attorney-client emails to ascertain whether they were "responsive to the search warrant." *Id.* at 164-166. "To start, the magistrate judge – by authorizing the Filter Team and its Protocol – erred in assigning judicial functions to the executive branch. . . . . Put succinctly, the Privilege Assessment Provision erroneously authorized the executive branch – that is, the Filter Team – to make decisions on attorney-client privilege and the work-product doctrine." *Id.* at 177.

Here, no judicial officer has yet authorized the Executive Branch to review privileged communications contained in the data collected from Rep. Perry's phone. Thus, the government should be enjoined from reviewing that information unless and until it has properly segregated material subject to an applicable privilege from its review.

In addition, to the extent that the government seeks a second search warrant to review the contents of the data obtained from Rep. Perry's phone, that review should be limited to the particular categories of information for which it has established by probable cause a nexus to the criminal behavior under investigation. Specifically, an affidavit accompanying an application for a search warrant "must demonstrate cause to believe" not only that an item of evidence "is likely to be found at the place to be searched," but also that there is "a nexus between the item to be seized and [the] criminal behavior" under investigation. *United States v. Griffith*, 867 F.2d 1265, 1271 (D.C. Cir. 2017) (*quoting Groh v. Ramirez*, 540 U.S. 551, 568 (2004)).

It is improbable that the government can establish probable cause of a nexus between any, let alone *every*, file on Rep. Perry's phone and whatever alleged criminal behavior it is investigating. Imposing reasonable limitations on the government's review of that data as requested by Rep. Perry would be consistent with the right to privacy ensured by the Fourth Amendment. *See Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)("The Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband. There must, of course, be a nexus – automatically provided in the case of fruits, instrumentalities or contraband – between the item to be seized and criminal behavior. Thus, in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.").

This is true despite a historical tendency to allow the broad review of every file within an electronic device because technological advances make it increasingly feasible for the government to limit its searches. Technological advances in the software utilized to "process" cell phone data justify the continued careful consideration of the breadth of cell phone warrants such that Rep. Perry's claim presents sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See Tom Doherty Assocs*, 60 F.3d at 33. *See also Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018)("[T]he Court is obligated—as '[s]ubtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of science' does not erode Fourth Amendment protections."); *Burns v. United States*, 235 A.3d 758, 773 (D.C. 2020) ("Vigilance in enforcing the probable cause and particularity requirements is thus essential to the protection of the vital privacy

interests inherent in virtually every modern cell phone and to the achievement of the 'meaningful constraints' contemplated in *Riley*." (citing *Riley v. California*, 573 U.S. 373, 399 (2014)).

A second warrant authorizing the search of the information on Rep. Perry's phone has not yet been issued so far as we know, and Rep. Perry is at a disadvantage because he presumably will not be privy to the sealed affidavit in support of that anticipated warrant. Nonetheless, he is likely to prevail on his request that the Court scrutinize any such warrant for probable cause, and that it create a process that will guard against the Executive Branch from accessing information that it is not entitled to under any circumstances.

### 2. A Preliminary Injunction is Required to Prevent Irreparable Harm

It is indisputable that irreparable harm would be the result if the Executive Branch is permitted to review information from Rep. Perry's phone that is protected by the Constitution's Speech and Debate Clause, the Attorney-Client Privilege, and other applicable privileges. To do so would allow Executive Branch prosecutors and agents to review confidential information, to which they have no entitlement, about Rep. Perry's communications with other Members of Congress about legislative activities, his communications with his attorneys, and private communications with his wife, family, and friends.

As explained above, a "taint team" is not a viable solution, and federal agents should not be given carte blanche to root around in Rep. Perry's phone data looking for evidence that they hope might further their investigation. It is inconceivable that reviewing agents and investigators would simply ignore unrelated material because it was not responsive to a search warrant or contained privileged material:

> [G]overnment attorneys and investigators serving on the Taint Team cannot reasonably be expected to ignore evidence of other crimes they may find in reviewing a criminal defendant's privileged documents. The conscious

11

>knowledge of other crimes could lead investigators to unconsciously alter the course of investigation and prosecution for other criminal matters.

Loren Weiss & Gregory S. Osborne, *Taint Teams and the Attorney-Client Privilege*, American Bar Association at 5 (Dec. 2015). Moreover, Rep. Perry's phone contains the most intimately personal information. *See Riley*, 573 U.S. at 395 ("Today, . . . it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives–from the mundane to the intimate."). Permitting the review of that phone data in contravention of the Speech and Debate Clause and Rep. Perry's Constitutional rights constitutes *per se* irreparable harm. *See* 11A Wright & Miller § 2951 Temporary Restraining Orders—In General, 11A Fed. Prac. & Proc. Civ. (3d ed.) (recognizing threats to a plaintiff's constitutional rights as "illustrative" of irreparable injury).

### 3. The Balance of the Equities Weighs in Re. Perry's Favor

It is noteworthy that in *Rayburn House Office Building*, the D.C. Circuit, and even the Justice Department itself, went to great lengths to avoid infringement on the Speech and Debate Clause while that matter was litigated. The day after Congressman Jefferson challenged the constitutionality of the search of his office, the President of the United States directed the Attorney General "to preserve and seal the records and to make sure no use was made of the materials, and that no one had access to them…" Id. at 657. The D.C. Circuit then enjoined the Executive Branch from resuming its review pending an appeal of the District Court's decision and continued that injunction pending a District Court order directed by the Circuit Court. Thus, the equities in this matter weigh not only in Rep. Perry's favor, but in favor of protecting the Speech and Debate Clause that is critical to the separation of powers concept that is central to the Constitution.

Anticipating that the government will cite delay in its investigation as an equity weighing in its favor, Rep. Perry submits that his proposal would not substantially delay the government's review of those materials for which it can establish by a probable cause a nexus to whatever alleged criminal behavior might be under investigation. Indeed, Rep. Perry's request seeks to *limit* the records and information being reviewed by the government. In addition, the government cannot in good faith argue that the process of segregating specific custodians or the results of search terms will take any more time than the process of limiting its review to the dates specified in the warrants – the entirety of the limiting process can be (and usually is) done concomitantly.

**4. A Preliminary Injunction is in the Public Interest**

In *Riley*, Chief Justice Roberts described the modern cell phone as "an important feature of human anatomy." 573 U.S. at 385. While it may once have been true that the only means to identify responsive "records and information" on an electronic device required the government "to open each file on the computer and view its contents" the advancement of technology undisputedly rebuts this presumption. "As technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, [the Supreme Court] has sought to 'assure[] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018) (*quoting Kyllo v. United States*, 533 U.S. 27, 34 (2001)). The corollary to Justice Roberts's conclusion in *Carpenter*, is that as technology enables us to better "secure the privacies of life against arbitrary power" and "to place obstacles in the way of a too permeating police surveillance," *id.* (citations and quotations omitted), the judiciary remains "obligated . . . to ensure that the 'progress of science' does not erode Fourth Amendment protections." *Id.* at 2223. As Justice Roberts also acknowledged in *Riley*: "We cannot deny that our decision today will have an impact on the ability

13

of law enforcement to combat crime. Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises and can provide valuable incriminating information about dangerous criminals." 573 U.S. at 401. Yet, as in *Carpenter* and *Riley*, the government is not hamstrung, "[our] answer to the question of what police must do before searching a cell phone . . . is accordingly simple—get a warrant." *Id.* at 403.

Surely the same is true with respect to the protections of the Speech and Debate Clause. Rep. Perry submits that to protect his communications pursuant to the Clause, as well as his constitutional rights, a warrant for the search of data contained on his cell phone must state with particularity the "records and information" to be searched and be justified by probable cause of a nexus to the underlying criminal behavior under investigation. *See Riley at* 403 ("The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought."). He also submits that a reasonable and proper process must be in place that prevents the Executive Branch from accessing information that it has no business examining.

### III. CONCLUSION

For the reasons set forth above, Rep. Perry respectfully requests that this Court order the government to return the data that the government obtained from his cell phone for which it has failed to establish by probable cause a sufficient nexus to any criminal conduct under investigation, and that it protected by the Speech and Debate Clause the Attorney-Client Privilege, and other applicable privileges and protections. Rep. Perry further requests that this Court prohibit the government from obtaining records and information associated with Rep. Perry's cellular phone that is within the possession, custody and control of AT&T. To the extent that the government has

already obtained those records, Rep. Perry requests that the Court order the government to secure and not review those records until the parties can be heard.

Dated: August 18, 2022

Respectfully Submitted,

E&W LAW, LLC

*/s/ John S. Irving*

John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

JPROWLEY LAW PLLC

*/s/ John P. Rowley III*

John P. Rowley III  (D.C. Bar No. 392629)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 525-6674
Email: john.rowley@jprowleylaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of August 2022, a copy of the foregoing Motion For Return Of Seized Property Pursuant To Fed. R. Crim. P. 41(G) And Request For Injunctive And Other Relief was served via the Court's CM/ECF system on all properly registered parties and counsel. In addition, undersigned counsel emailed this pleading to the U.S. Department of Justice prosecutors referenced herein, who stated that they were willing to accept service via email.

John S. Irving (D.C. Bar No. 460068)